## KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* GUARDIAN TRUST COMPANY ET AL.

No. 22.  Argued January 15, 16, 1930.—Decided February 24, 1930.

2

See also 210 Fed. 696; 240 U. S. 166; 146 Fed. 337; 171 *id.* 43.

*Mr. Samuel W. Moore,* with whom *Messrs. Frank H. Moore, Cyrus Crane* and *A. F. Smith* were on the brief, for petitioner.

*Mr. Justin D. Bowersock,* with whom *Messrs. Robert B. Fizzell* and *John F. Rhodes* were on the brief, for respondent.

4

Mr. Justice Butler delivered the opinion of the Court.

The question is whether the Guardian Trust Company, in addition to amounts taxable as costs between party and party, is entitled to recover anything on account of counsel fees or other expenses as costs between solicitor and client.

In a judgment creditor's suit brought in the United States Circuit Court for the Western District of Missouri by the Cambria Steel Company against the Kansas City Suburban Belt Railroad Company, receivers were appointed for the latter. It had given its notes for large amounts to the Trust Company and pledged stocks and bonds as collateral security. The Kansas City Southern Railway Company had acquired on mortgage foreclosures the properties of the Belt Company, and of the Kansas City, Pittsburg & Gulf Railroad Company.

The Trust Company claimed that the Southern Company, having succeeded to the properties of the Belt Company and of the Gulf Company on terms that preferred shareholders to creditors, became liable for their

debts.* It brought three suits in a Missouri court to compel the Southern Company to pay the debts owing to it by them. Thereupon the Southern Company brought two suits against the Trust Company in the United States court to enjoin prosecution of the state court cases. One related to the actions on the debts of the Belt Company (146 Fed. 337) and the other to all the actions. 171 Fed. 43. Injunctions granted by the lower court were dissolved by the Circuit Court of Appeals.

In the creditor's suit, the Belt Company and its receivers filed an ancillary bill against the Trust Company to have the claims of the latter against the former declared invalid, to recover the collateral security, and to have an accounting. The Southern Company intervened, claiming under the foreclosure, and sought to recover the collateral security and other property from the Trust Company. The decree of the Circuit Court, except as to matters not important here, denied relief against the Trust Company, established its claims against the Belt Company and, notwithstanding the Trust Company's contention that the issue was not before the court, adjudged that the Southern Company was not liable therefor, and ordered that one-third of the costs be borne by the Trust Company and two-thirds by the Southern and Belt Companies.

The matters adjudged in favor of the Trust Company were not taken to the Circuit Court of Appeals for review. The Trust Company appealed. It insisted that the lower court erred in holding that the Southern Company was not indebted to it. Preferring to pursue that company in the actions pending in the state court, it had not prayed judgment in this suit against the Southern Company. It

---

* *Northern Pacific Ry.* v. *Boyd,* 228 U. S. 482, decided while this case was pending in the Circuit Court of Appeals on the first appeal.

also maintained that the lower court erred in holding it liable for any part of the costs.

After the case had been argued and submitted but before opinion was announced, owners of a small minority of the shares of the Trust Company were permitted to file a suggestion that the Trust Company should have judgment against the Southern Company for the debt of the Belt Company. The court reversed the decree below, decided the Southern Company became liable for that debt, postponed for further argument the question whether under the pleadings the Trust Company might have judgment therefor, and held it was entitled to recover its entire costs. 201 Fed. 811, 829.

Later the same stockholders by leave of the Circuit Court of Appeals filed, and at the final submission of the case were heard in support of, the following suggestions:

That the court embody in its order for reversal a special finding that the creditor's bill, ancillary bill and intervening petition were instigated and prosecuted by and for the Southern Company without good faith, and that the entire litigation was trivial, wanton and oppressive. That it direct the lower court to reserve jurisdiction to ascertain the amount of solicitors' fees and other expenses necessarily incurred by the Trust Company in making its defenses, to find the amount of such expenses, tax them as costs in the case and enter a further decree against the Southern Company therefor. Or in the alternative that the final decree below be without prejudice to the right of the Trust Company to sue the Southern Company for such expenses. That such additional decree also include the expenses and damages incurred by and resulting to the Trust Company from the second injunction suit (171 Fed. 43) and that it be without prejudice to the rights of the Trust Company to move for such damages and expenses in the first injunction suit. 146 Fed. 337.

In its second opinion the Circuit Court of Appeals dealt with these suggestions. 210 Fed. 696. It said (p. 723):

"A deliberate consideration of this petition and of the exhaustive arguments of counsel have, however, persuaded that inasmuch as the questions suggested came for the first time into this suit at the rehearing in this court, as no evidence has been taken relative to them and as the evidence upon the issues tried in this case was not brought to this court, it would be unwise and might be unjust to adjudicate the questions presented by the petition of these stockholders. Moreover, as this court cannot rightly determine the questions relating to the costs to be taxed at this time, as there are established rules of practice concerning them and as directions to the court below to open and try new issues might, and probably would, prolong this litigation through several years more, our conclusion is that our just course is to leave the taxation of costs to the court below under the principles, rules, and practice in equity." And, " as a conclusion of the whole matter," it gave directions for the entry of a specific decree with "costs."

And the court adjudged that the decree of the lower court be reversed and remanded the case "with directions to render a decree for the Trust Company in accordance with the views expressed in the opinion of this Court." The Southern Company appealed but did not raise any question concerning costs. And there was no cross-appeal. February 21, 1916, this court affirmed the decree of the Circuit Court of Appeals. 240 U. S. 166. The mandate set out the decree below, ordered that it be affirmed and remanded the case to the District Court.

April 15, 1916, pending exact determination of the amount conceded to be payable under the decree, the Southern Company paid $821,623.28 to the Trust Company. Later the payment being found in excess of the

amount required, the difference was adjusted. April 18, 1916, the mandate was filed in the District Court. October 4, 1922, the Trust Company applied to have final decree entered, and claimed not only such costs as are taxable as between party and party but also counsel fees and other expenses as costs between solicitor and client. The court construed the opinion of the Circuit Court of Appeals to find that in carrying on this litigation there was lack of good faith and a purpose on the part of the Southern Company to despoil the Trust Company, held itself bound by such findings, and interpreted the decree to require it to ascertain and tax against the Southern Company counsel fees and other expenses incurred by the Trust Company in making its defenses.

A special master was appointed to ascertain and report the amount of such expenses. The Trust Company presented items of its demand in two groups. The first included those claimed to be taxable as between party and party; the second included other expenses amounting to $319,829.97 of which $299,137.30 was attorneys' fees, the balance being to cover printing briefs, services of experts, miscellaneous and incidental disbursements. The master found the costs taxable as between party and party and as to that there is no controversy here. He also found the Trust Company entitled to counsel fees and other expenses amounting to $296,520.37 to be taxed as costs between solicitor and client. After hearing upon exceptions the court, contrary to its earlier decision, held that the proper construction of the decree of the Circuit Court of Appeals limited recovery of costs to those taxable between party and party, and entered decree accordingly.

The Trust Company again appealed. The Circuit Court of Appeals, apparently assuming that its decree and the mandate of this court authorized the District Court to allow the Trust Company costs as between solicitor and client, reversed the decree. 28 F. (2d) 233. It

referred to the character of the litigation, held that federal courts of equity have jurisdiction to allow such costs, citing the practice in the High Court of Chancery in England as applicable here, concluded that the Trust Company is entitled to such an allowance and remanded the case with directions to the lower court to make proper allowances for costs as between solicitor and client.

Did the mandate of this court authorize the District Court to make any allowance in favor of the Trust Company on account of attorneys' fees and other expenses to be taxed as costs between solicitor and client?

The decree here affirmed required the "taxation of costs . . . under the principles, rules and practice in equity." It undoubtedly covered ascertainment of amounts taxable between party and party. There was no specific reference to any additional allowance. The language used disclosed no intention to require more than the usual taxation. When used in a judgment or decree without qualification, the word "costs" means the amounts taxable as such under Acts of Congress, rules promulgated by its authority and practice established consistently with governing enactments. *Newton* v. *Consolidated Gas Co.*, 265 U. S. 78, 83. *Ex parte Peterson,* 253 U. S. 300, 316. In actions at law costs follow the result as of course, but in equity costs not otherwise governed by statute are given or withheld in the sound discretion of the court according to the facts and circumstances of the case. The nominal amounts fixed by statute (28 U. S. C., §§ 571, 572) and taxable as attorneys' fees are not meant to cover the compensation to which lawyers in charge of the litigation are reasonably entitled. A decree merely allowing costs to be taxed does not mean that anything is to be included on account of counsel fees in addition to the amount specified in the statute. Even if it be assumed that federal equity courts have jurisdiction to allow costs as between solicitor and client and to include

therein attorneys' fees in excess of the amount prescribed by statute—and as to that we express no opinion—the purpose to authorize such costs and to make such allowance should be clearly expressed in the decree. 2 Daniell's Chancery Pleading and Practice, 6th Ed., p. 1410.

For the proper construction of the decree under consideration, regard is to be had to the issues before the court on appeal, the findings applied for and the directions given. The proposed findings and additional recovery extended to matters not before the court. The costs taxable as between party and party were involved on the appeal and the court reversed the decree of the lower court which charged one-third against the Trust Company. No question of costs as between solicitor and client had been raised below. No issue of bad faith had been framed, and no such charge was suggested until after the filing of the first opinion. The stockholders' second application, made pending rehearing, contained the first request for a finding of fact on which to base a decree for allowance of attorneys' fees and other expenses to the Trust Company. As there was no appeal by the Belt Company or the Southern Company, the merits of the claims on which they sought recovery against the Trust Company were not before the court.

The lateness of the application, the lack of evidence and danger of injustice mentioned in the opinion were good reasons why the court should deny the application. The suggested danger of prolonging the litigation by trial of new issues was a reason for refusing to direct the lower court to open the case and to make the requested determinations. The failure of the court to make the requested special finding, to adopt the alternative suggestion or to take any action in reference to the parts of the application relating to the Trust Company's damages and expenses in the injunction suits goes to show a purpose to deny any recovery of expenses in addition to the costs

which under established practice are taxable as between party and party. And the opinion makes it clear that the decree directed to be entered below was intended to be an end of the whole matter. It is plain that the stockholders' application was denied and that the decree did not authorize or permit the taxation of costs as between solicitor and client.

The mandate required the execution of the decree. The District Court could not vary it or give any further relief. *In re Sanford Fork & Tool Co.*, 160 U. S. 247, 255. *Gaines* v. *Rugg*, 148 U. S. 228, 241. *In re Washington & Georgetown R. Co.*, 140 U. S. 91, 96. *Ex parte Union Steamboat Company*, 178 U. S. 317, 319. That court was right in holding that, by the decree of the Circuit Court of Appeals and the mandate of this court, the costs recoverable by the Trust Company were limited to those taxable between party and party.

> *Decree of the Circuit Court of Appeals reversed and that of the District Court affirmed.*